Case No. 09-0642, Horace Ware v. GJK Petroleum, Inc. Hi, I'm Richard Zachary, the attorney for GJK Petroleum, Inc. My name is Thomas Long, the attorney. You have 15 minutes. You can save out from your 15 any portion you wish for a response. You needn't apologize. The weather was terrible this morning. It is so over-determinant in regard to what happened, but thank you for your understanding. As you know, gentlemen, I represent the appellant in this case. Just for the record, now you know why we set all of our cases at the same time, so that if something happens, you know, we tell you to be here at 930, so that if something happens, we can then substitute the next case without skipping a beat. Quite so. This case is about a cashier who basically did what he was supposed to do, what he reasonably perceived that he was supposed to do, premised upon conditions, admonitions, and instructions that came from the owner-manager of the premises, which was a gasoline station and a small adjacent mini-mart over which the cashier was to have complete stewardship during eight long hours of the night. Well, let's talk a little bit more about that, because that's getting into your theory that this employee is a manager and that consequently he's subject to the Metzler rule regarding management. But what we have in the facts here, the only thing we have, is what's at page seven of your opponent's brief where he says, when one of the owners was asked, what instructions did you give this clerk with regard, I don't mean to use clerk to negate your contention that he may be more than a clerk if he's left in charge of the place for a whole night. But what he said, he said the instruction was, I didn't say anything, just physically act to the people, though. If they're stealing something, like I said before, you know, ask them for the stuff to put it back and leave the store and coming back again. That seems to be the furthest, factually, that was obtained through discovery of all the owners regarding any instruction or imposition of any responsibility on this clerk with respect to shoplifted merchandise. And I don't, and you're making that into an instruction to confront the shoplifter and to do something for purposes of retrieval. And you're going to have to explain to us how this instruction morphs into that. Justice, I would respectfully disagree with your gloss on Delo's particular, that quote from the record. That's what you're here for. There was a number of situational facts that the cashier was well aware of, inclusive of that particular admonition from the owner-manager. For a period of about 60 days, probably more, 60 days at least, there was a metal baseball bat sitting in full view. The only explanation proffered with respect to that bat was that it was left there by a youth, by a child, and was not returned and was placed behind the counter where it could be retrieved by the person who left it there or abandoned it there. There is no other proof other than whatever inferences we could make from these naked facts that somehow the bat being present behind the cage implied an admonition or an instruction or an assumption of responsibility to ever use that bat, particularly in the face of all the other evidence which goes the other way. And unfortunately, you don't have this clerk there. He'd left the country. Well, Justice, it would seem to me, of course, credibility is always an issue. And, Justice, it would seem to me that if indeed children had left that bat on the premises, after 60 days one would certainly expect a child to retrieve the weapon. Moreover, there are other places we can certainly presume for that patent weapon to be placed or an object that can certainly be used as a patent weapon if the kids are taking a long time to retrieve it. What I'm saying is this. I'm not going to discount the fact that that bat may have been left there. But, Justice— Well, all we have is just this scene. We have a scene of a clerk behind a bulletproof window with a metal bat on the counter, which this clerk subsequently uses on Justice Breyer for whatever, you know, which is getting us into another issue, against the plaintiff. Now, without more, how far can we go in drawing inferences just from those elemental facts? Because that's all we have. Well, allow me to draw the inference. You have a situation where the cashier— I mean, we could speculate ourselves on that. I'm asking you a legal question. To what extent are we allowed to project from that fact that the bat was within the scope, the use of the bat was within the scope of this clerk's employment? How do we get there legally? Well, Justice, then I would say the first point, the first cluster of facts to remember is this. You've got cashiers who are told, when you see somebody shoplifting, when you suspect somebody is shoplifting, approach them, get the merchandise back, banish them from the store, make sure— So there is a security component to his job. In addition to being a salesperson, he has a security component. It certainly would seem that way. They're behind bulletproof glass. If he dials 911, he is inviolable. If you're behind bulletproof glass and you see someone stealing a candy bar, do you think that person is going to take you very seriously unless you come around from behind that counter? I would beg to differ. And as I point out in my brief, even if— He had a security function. Even if Paul Scherer met these guys to realize, well, I didn't really need you to approach the guy, it certainly was inevitable. Is it foreseeable? Let's get back to because, you know, all you need is one salient fact to get past summary judgment and get this case to a jury, which is what you want to do. Justice, I think it was foreseeable. So the next question, I suppose, obviously is, is it foreseeable that in investing him with a security function, which they obviously did— Well, you know— Let me finish my question, okay, because I want to get an answer from him about this one precise point. Is it foreseeable that in part of that security function would be the use of that bat? It is foreseeable that a cashier working on premises where there's a baseball bat— Is it foreseeable to the owner of the store that the bat would be used to attack a shoplifter? It's foreseeable— Because the bat was there? Or because they knew something about the clerk? I think the bat was left there as a prophylactic warning to people using that— Well, no, wait a minute. You don't have any factual basis— That's an inference that I'm drawing, sir. It's an inference that really belies the facts that are in evidence. The facts in evidence was that it was left behind by some kids. Now, that may have been a made-up story, but you didn't rebut it. I'm not sure how you could have rebutted it. But the fact remains that that's the fact the judge had before it. That the bat— That was the testimony of the owner yesterday— That the bat was not put there by the owner as part of the security function of the— But he did tell the tellers, he told them, put the bat in your cashier's cage. Don't put it on the shelf. Don't put it in the corner. Put it— Well, I'm not sure what you inferred by that. But you would suggest, then, that as part of his security function, it's foreseeable to the owner at the time that he invested him with his security function, it was foreseeable that he might use the bat in order to enforce his security. Well, you realize there's nobody else going to tell him no. He's the boss. He's the core resident. That seems to me to be your best case. To what extent is foreseeable— And I'm aware, I read Mitchell v. Norman, which says that foreseeability can be a factor. But I think we have to be very careful here. Because foreseeability is certainly a factor in any direct negligible action. But here we're talking about vicarious viability in defining scope of employment. Absolutely. So when we're talking about foreseeability, we're only talking about how this factor may help define the scope of his employment. And frankly, you know, logically, it's intrusive to that notion. You know? But it nevertheless has been applied in the cases where they say it is a factor. But frankly, what is a factor in scope of—are the restatement actions. Is it something he was employed to do? And maybe that's where foreseeability plays a part. And was it within the confines of the time and space in which the employment duties were supposed to be carried out? And was it to subserve, at least in part, the benefits or the interests of the employer? And that's where we're hanging here. And now, your opponents—I'm just exploring here. I have not made up my mind. I'm going to feed you a softball right now because this is what troubles me with regard to your opponent's position. And I'm going to give it to you now so that I can hear from your opponent later. Your opponent seems to say that where the reaction of an employee is so excessive, like in the Harrington case where the cab driver goes ahead, you know, and jumps in somebody's car and causes a fatal accident, or where a delivery truck—a newspaper delivery truck pulls out a gun and shoots somebody who's trying to, let's say, steal the newspaper. Where it's so excessive as to have deviated from any subservience to the interest of the employer and becomes a personal pursuit. Okay. Now, if we just satisfied ourselves with that, you'd be in a tough spot. Because this reaction of an employee accusing somebody of abetting, aiding and abetting a shoplifter, leaves his cage with a baseball bat and whacks him over the head to cause the guy to have seizures for the rest of his life. Even if you were charged with some responsibility here of protecting the property, we'd have a hard time showing that this reaction had any real logical connection with that responsibility, particularly since there was no purpose to be served. What did he get for the employer out of hitting him on the head, you know, at that point? I mean, the one thing that he was struggling for merchandise. But this all, the other work, the other patron left with the so-called stolen merchandise. So what's the point of restraint? Nevertheless, even when it's an excessive reaction, it's not conclusive that it subserves his own purpose if he can show evidence, introduce evidence to show that he was still trying to assist the employer. And in this particular case, that may very well be an issue of fact. Because he did not have his own ax to grind. There was absolutely, the scene is devoid of any reason or motive that would appear to subserve the private interest of the employer. So as he did it, he did it as an employee to somehow fill out his responsibilities to his boss. To determine the mix between self-motivate, self-purpose, and employee's benefit may very well be an issue of fact. And that's what I think Justice Cahill is reasoning about. You've got some cases out there that tend to... I'm still learning the softball. I've got my middle hat here. Well, no. But that's why I was asking you to see if we could tease out of your brief the most salient question that could arguably be one that should really go to the jury. There's no evidence on the record about the past history of Mr. Abdul-Rab, right? As in some of the cases we have, some of the more, the famous case involving the National Food Store guy, that lunatic. This is not a matter of... But you cite that case. You cite that case. The lunatic manager of the National Food Store who ends up beating up on a four-year-old kid after chasing a 10-year-old kid. But there was substantial evidence there that the National Food Stores knew about his propensities for violence. They knew about it, or they should have known about it. But in fact, they did know about some of it. With respect to Abdul-Rab, we don't know anything about this guy except he was little and he was 5'6". Now, you might have been better off to switch the facts around a little bit, make him 6'5", and a burly guy who socks him with his fist. I think that's a factor that contributed to his willingness to wield the bat the way he did. One of the factors. So what you're basically arguing is that this is clearly a question that we ought to leave to a jury to decide what his motivations were and everything else. We don't care. I dare say it should have been submitted to the trial. I don't think you gain that much, with all due deference to Justice Kagan, from that case involving the manager who goes after the four-year-old kid who is supposedly relieving himself against the law. It was the ten-year-old. No, he went after a four-year-old who was doing this, but he wound up attacking a ten-year-old. No, it's the other way around. I think it was a four-year-old who pulled out of the car, but the store was closed. The ten-year-old was the one who was urinating on the wall. Right, the store was closed, and it was intoxicated. The famous case. But in that particular case, the language cited in that case said that when you're acting as a manager, then we'll look at what you do in a different light than we will if you're simply an employee, because you are making the policy of the store with regard to that particular conduct. So it's the managerial increment, which I trust is why you're trying to turn your employee here into a manager. Well, sir, you used an adjective. You made it into an adjective. You said managerial. You said managerial. He had managerial responsibilities. No, he was not a manager. That wasn't his job title. Was it his job to make policy for the store? Who is there to do it for him in an emergency situation? Sir, in an emergent situation, policy is one thing. But in an emergent situation... But not if he's told, you know, to stay with his job if he sees something wrong, to call the police or whatever. If they would have given him that admonition, and had he dialed 911, this case never would have arisen. But they told him to approach, get the merchandise. No, no, no, no, no, no. They did not tell him to approach. They said that... They may be inferentially indicating that he ought to approach, but you have a long way to go to show that they told him to approach. All that they said to him is to tell the shoplifter to refrain, to return the merchandise, and to leave the store. You're projecting into that a lot more. I am projecting this. It is reasonable to expect an employee, given that admonition, who does his job behind a bulletproof glass window in a cage to walk around the corner and approach an individual if he wants that admonition to be taken with any semblance of seriousness, which is what this man did here, taking with him a metal object that had sat there for 60 days in plain view, as you would expect him to do, because he was barred from bringing any weapons on the premises, and that bat was obviously there to give them a sense of security, since they couldn't bring anything else to work with them. And he's working all night long in a gas station by himself. The problem is that you're working with very little to expand these inferences into so very much. And the question is whether you're going to succeed, since we're dealing with summary judgment. If this were a jury trial, I don't think there would be enough there to reverse the jury, but there may be perhaps enough inference, and we'll wait and hear from your opponent on that, to reject summary adjudication. Okay. Is there anything more you'd like to ask me, John? No. I have. Yes, thank you. Okay. I've been so reticent, I've been speaking at the end. To begin with, you didn't provide us with an index to the record. For which I humbly apologize, and I beg the court's courtesy and contrary in that regard. You didn't provide us with a report of proceedings, so I don't know what you argued before the trial. I was not the attorney at the trial court. There was not a court reporter present, and as Honorable Justice Joseph Gordon, Justice Gordon stated some minutes ago, I don't believe, sir, a bystander's report was requisite when we can presume and assume that the parties presented their briefs to the judge. No, no, I never said that. All I said was that I presumed that the reason counsel didn't submit a bystander's report is because he thought he would do better without it. All I meant to refer to is you did say there wasn't a requisite. That's all I was referring to. You're talking about the previous case? Yeah. That was a totally different case. That was an abuse of discretion standard review. Sometimes it's a requisite and sometimes it's not. I just was talking about this. Sorry. That's all I'm saying, Justice Gordon. I mean, I've had other situations where if it's presumed they presented their briefs, it doesn't have to be a court reporter. If you're telling me as a policy practice I should henceforward make sure I prepare a bystander report, even if such a presumption can be outstanding, I will act accordingly, and I apologize. Also, you have a cause of action for negligent hiring and negligent supervision. I assume you're abandoning that. On the contrary, the brief we filed was dual in its emphasis. I would submit that the chief and fundamental point is made in the first argument, but there was an allegation in the complaint that the GJK, that they had negligently armed Abdulrad with a metal bat. In the proceedings on summary judgment, the briefs and arguments submitted by the GJK attorneys scarcely, if at all, even broached that particular issue. Now, they dealt with negligent hiring, but the particular focus that should have been brought at some point was what about the allegation that there was a measure of negligence in effectively arming a cashier with a metal bat? That makes it a negligent supervision case. Yes, and that was never even addressed. So in my, and I think now, I think in the brief submitted by a defendant, they have argued on appeal that we are barred, precluded somehow, because since they didn't argue it, we didn't raise it independently in the trial court during summary proceedings. I don't think that really it was requisite. I think it's still a live issue, and I would respectfully submit it's another basis for a reversal of the trial court in this regard. Is there anything more you'd like to ask me, sir? No, sir. Thank you. Thank you very much. We'll give you an opportunity to respond after we've heard from your opponent. Thank you. Mr. Long. Thank you, Your Honor. May it please the Court. I think Justice Cahill hit the nail on the head. What counsel needed to prove was the existence of a fact that would get this case to a jury, and I think Your Honor's all did well in pointing out the problem you had. Compliments will not get you very far. I always like to try. He doesn't have a fact. Let me read you something from a federal case which he cites, which has a nice survey. This is the federal mailman's case. It dates back a while, but listen to this language. Whether the mailman in this, this is a mailman who just twisted somebody's arm. There's no great significance. It looked like somebody who got his arm twisted by a mailman and saw the U.S. government as a possible defendant and said, sue. But anyway, he did. You take those facts as proof. The very able trial judge at the federal level realized that it was Illinois law that would apply, and he surveyed up until that point all of the cases that he could get his hands on. And he says that the scope of employment issue would depend on the particular facts surrounding the alleged altercation. You wouldn't disagree with that. No, absolutely not. Intentional assaults performed, this is important because he courts from an Illinois case, at least in part to further the employer's business. Now, you can say that it's de minimis when he's defending a 59-cent bottle of pop, okay? But he was certainly defending that bottle of pop. That's what triggered the whole thing, okay? Generally fall within the scope of employment, even if it's only in part that he's defending the employer's property. That's the first thing to take into consideration. And while intentional assaults performed purely for the employee's personal interests generally will not. Well, there doesn't appear to be any motive for this individual clerk to have attacked this guy other than the fact that it was triggered by what he perceived to be a shoplifting incident. Wouldn't you agree? I would agree with that. Well, isn't that just enough? Just enough to get it to the jury. Because of the other cases in Illinois, the scope of that general proposition your Honor just mentioned, that's a general state, but the case of Harrington with the Sun Times driver shooting a suspected thief and a pizza delivery number. Well, the shooting there, there was a question whether he was shooting someone who was stealing his newspapers or shooting someone who was stealing his truck. And the court made a point of saying if you're stealing the newspapers, a purpose of protecting the employer is inherent in those facts. On the other hand, if he was shooting just to protect the truck, then he's off on a frolic of his own. Right. And I think the opinion presumes at certain points that even accepting that he was stealing papers, it was still an outlandish, I don't know if the word was outlandish or out of proportion, which I think is the operative phrase that's used in those cases where an employee engages in a physical assault. Well, I happen to have what you're talking about right in front of me. And I have a real problem with that because this opinion was handed down by one of our finest judges, who unfortunately is not with us anymore. But he seems to vessel it. First, he says you need to subserve the employer's purpose. And he says under the facts of Harrington, there is no evidence that the employer's purpose was being subserved. Then he has this mysterious paragraph. He says, additionally, the shooting would not fall within the scope of employment, even if Scarpelli had believed Plaintiff was a newspaper thief. Such conduct was too far removed from any reasonable, foreseeable conduct of the employer. Then he says that. Then he goes back later on in the case and talks about the fact that there was no employer's purpose in his action. So he puts in this paragraph and then runs to the hills. But then remember, that was a gun. And that was a gun where there was no evidence whatsoever that the employer knew that he paid, that he went on. However, incidentally, it's Justice McNamara. And I have great respect for everything he writes. But I have trouble understanding this one. I thought there was an indication in that opinion that there was testimony that the employer may have known that. May have known. Okay, but there was a dispute. But here it's undisputed they know about the baseball bat. But the purpose, as your honors point out, what do they know about the purpose of the bat? The bat was placed there for safekeeping. That's unquestioned. Well, it's not the purpose of the bat. It's the purpose of the batter. What was in this poor employee's mind when he went after this plaintiff with a baseball bat? Was he at that? I mean, one thing, if he had this guy in a back room torturing him with electrodes, then you would say he totally abandoned his employer. He's now in the ecstasy of a sadomasochistic fantasy, and it's his own purpose and nobody else's. That did not happen here. He went after a thief with a bat. Right, but the thing he's got going for him, what you've got going for you, is an old case by Justice Giganti, as long as we're talking about wonderful justices of the Illinois Appellate Court. You mentioned McNamara. I'll mention Giganti. That's Bucktown Partners. And in Bucktown Partners, Giganti made the statement, which is still good law today, that an unrebutted evidentiary fact has to be accepted by the jury, even if it got to the jury. So there could be no quarrel, since there was no cross-examination, apparently, to impeach the owner about the bat, was there? It stood unrebutted. The bat was simply there because some kids had left it behind. There was no attempt to establish that the bat was there for a purpose other than the fact that they were waiting for the kids to come back. As unlikely as that seems, you'd have to accept that fact. And I would submit that the inference counsel seeks to draw that was there for him to use is unreasonable, given the other testimony that we have, testimony from Mr. Polichiro that he did not supply his people with self-defense items. He specifically instructed them not to bring any self-defense items in. And then, as I believe Justice Horton went through, the specific training given to people like Mr. Abdurab was... It was well-advised prior to his deposition. Let's put it that way. Well, he testified to it. It's in the record. God bless. But he said, you know, don't confront. Tell them to put it back. Don't come into physical contact with it. Call the police. So he put that together with the instructions not to bring devices in to protect themselves. The only reasonable inference that we draw is the bat was there for safekeeping, as Mr. Polichiro said it was. Not the, it's put there just in case something bad happens, grab it and beat someone over the head with it. That's contrary to all the evidence, so it's an unreasonable inference. That does not get you to the trial. Except we do not have a shred of evidence from which to project that he was subserving his own interest and his own interest exclusively in doing this. The context, he speaks the fact that what he was doing was carrying out what he erroneously or not believed to be his responsibility. And I would submit, Your Honor, you've got to look at it the other way. You look at what was he doing. It was a direct contradiction to what his employer told him. Well, not a direct contradiction to this one deponent whose testimony I read where the instruction was to tell the shoplifter to return the goods and to leave the premises. There's nothing in there that it was followed with any further admonitions to stay in his cell. I believe in page 359, 3, 49 and 350 of the record, Mr. Polichiro's deposition, he said his employees were never to physically confront anyone, not to come in contact with them. So you put all these bits of evidence that are all favorable together, the only conclusion to be drawn is that bat was not put there to be used. I mean, the question is, and of course, you know, this is a, it's not going to be a dispositive issue. But to what extent can we, is it a matter of good sense or is it a matter of the unwarranted taking of judicial notice from a private fact known to the judge that standing behind that bulletproof glass, you can't really tell somebody to return the merchandise without leaving the confines of that area because you can't holler it from where it is. Now, is this a question of judicial notice? You know, then we could assume that fact. If it's simply because we've been in these kinds of many places ourselves, then we can't take advantage of that. I'm not sure you couldn't have yelled to him. You obviously got to communicate from behind the glass in some fashion. But I think what we also have to keep in mind is the mindset of the defendant. We're talking foreseeability and holding them vicariously liable in a situation where they gave explicit instructions and prohibited any sort of conduct like this. And then this individual, for whatever reason, takes it on himself to do it. We're seeking to hold the defendant, the employer, responsible for that. And given everything that they did and all the evidence was that they tried to instruct their people not to do this. And he didn't. And I think that has to be looked at, too, as well as the Williams case in Harrington, even though it equivocates. I think it's similar. A simple employee assaulting someone in the either correct or incorrect belief that they are stealing their employer's property. And that's exactly what we have here. So I think this case falls directly within those two cases and not within the Metzler and its progeny because this gentleman was not a manager. He... Wait a minute. I mean, what is a manager by definition? A manager, I think... He was the only employee on duty, was he not? Yes, he was. He's there all by himself. Who else is managing the store? Do you mean the store is managerless at that point? I think... Well, the way I interpret it, and it may be wrong, is the managerial exception... Here is the quote from Metzler because it may resolve some things for us. Metzler does not insist that he be a manager but uses a manager as the kind of benchmark. And the quote is, the master who puts the servant in a place of trust and responsibility or commits him to the management of his business. So trust and responsibility is an appositive to manager. Let me give you a classic example. Is justly held responsible when the servant, through lack of judgment or discretion, or from a firmity of temper or under the influence of passion, goes beyond the strict line of his duty. Speaking through the little thing in the six-inch glass, the clerk here says to the gentleman who was about to steal the pot, I'm not serving you because you're an African-American. I'm not going down that road. Well, what are you going to do to defend the Title VII Act? Now you're in federal court defending a Title VII Act. That's not a managerial role. If an employee of a company says that the company is in hot water. That's Denny's. I think what's key here is the evidence about Mr. Abderrahman. He's the only person there, no question about it. Right. And he says, I'm not serving you because you're an African-American. Well, that's a discriminatory thing where there's a different standard as to how the employer is held liable. This is a different context. This is for his actions. It's a discriminatory context. It's not a criminal act at the moment. I think they're apples and oranges with due respect. Yeah. But I think the managerial aspect, he is the only guy in the store. Grant, accepting that as a managerial person, and every single employee in these tiny mini-marts and bodegas all through the city are managers. I think in terms of imposing vicarious liability on an employer, that has to be more. Does he determine the hours? Does he do other managing? A softball to you because that's what we do to each other. But I think a more worthwhile analogy than having a server in a store say, I'm not serving you because of your race, which is really within the direct line of what he's supposed to do, would be the question, what if instead of the server saying that, the busboy said that? Or the janitor said that? I don't have an answer for that. But that's... I can study up on that. But with regard to his overall, I think you know my position on that, and I'll just move on to the last aspect. The count too. In the... Is the bat crucial if he had hit him with his fist? Would you still be making the same argument? Absolutely. And I think counts would have a much tougher argument because then there's this... The cases seem to wander back and forth depending on whether or not there was an agent like a gun or a big guy against a little guy. That's why I focus on the out-of-proportion response and given his instructions... This area certainly isn't as well settled as we'd like it to be. No, no. With Harrington, you could read it several different ways. I read it my way, just as Gordon reads it another way. But with regard to that second count, I just want to touch on it real briefly. That's direct liability in my motion for summary judgment, which my associate did, so I was involved in that process. We did argue that there was no facts to support or create a general question of fact as negligent training, negligent hiring. There was no evidence of negligent hiring. No. I mean, they're not required to do a criminal background check on him. In fact, they did not, right? No. Well, they did check with a former... And I was going to point that out. They checked with a former employer and said he was a good guy. And so they did something. But the bottom line is counsel is arguing that this armed with a bat allegation, I think that all falls in with our analysis of what that bat was for, why it was there, what it was used for. Did they arm him, or is it just there for safekeeping? So I think the trial court was justified in determining that that bat was not left there to arm him with it and enter summary judgment on him. If that was out there then, that's a basis for the entry of summary judgment on Count 2 also. All right. If there's no other questions... Well, I just have one problem. When you leave somebody in a gas station to run this station, isn't that a manager? He's the only guy there? I believe a managerial role connotes more than taking cash and stocking shelves, which is what he did. I mean, I don't know if the gas station quite... Well, he's managing it. I mean, there's nobody else there. Mr. Poitier. Mr. Poitier is there during the day. He determines policy. He does all the hiring. He does all the training. That, in my humble estimation, is what a manager does. Maybe he was an acting manager. As I said before... I'm not sure that that's really dispositive. I mean, whoever it was with the bat in his hand, would it make any difference whether he was a manager or not? If he's an employee, the possibility of culpability on behalf of the employer is there. The possibility. You could view anybody who works in a store as managerial. Of course. Because they take cash, and if they see someone stealing something, they're going to say something. Analytically, as I see the distinction between a manager and just an employee, is that being a manager expands the scope of your duties. And as such, more and more events will be considered as being within the scope of the manager's duty as opposed to, so to speak, a ministerial employee. And I think that's why it's critical the standard of what a manager is, is higher, because it incurs more... So because a manager, in effect, speaks for the employer, at least to a far greater degree than a simple employee. He doesn't speak for the store with regard to corporate events and other things, but certainly within the purview of the day-by-day operation of the business, he may be held to do that so that what he does is what the employer does. If there's nothing further, thank you. Counsel, thank you. A final word. Did your opponent leave? No, he moved all the way to the back. We frightened him. He's moved off. I just would like to make two comments, if I can, Justices. I dare say that if you look up the word night manager in any dictionary, it will talk about an employee with managerial responsibilities. An acting manager, whatever you want to call him. He's certainly in charge. That's why that phrase exists. But how do we know that he's in charge? I mean, what evidence? Is the mere fact that he's there alone enough to tell us that? Yes. Now, supposing it were a cleanup person who's there alone. Is it presumed that there is always going to be a manager on premises? Supposing you have someone in an office who's a file clerk who is, because of some work burden, is hired to work the night shift. Does he become the manager simply because he's on the premises? May I just point out the discrepancy in that particular factual scenario? A file clerk working late all night long in a locked-up law firm or some kind of tax firm, whatever. The public doesn't come in there constantly. You put a night manager on duty in a gas station at a minimart, most certainly there are going to be defects. I'm just not sure how far we can go in navigating that distance to a sponsor. I grasp the distinction, and the distinction exists. I just would respectfully submit that the facts are sufficiently different here. The only other thing I'd like to point out, if I can, is counsel, a fine attorney, mentioned something about the record that I don't think is borne out. I don't think Pulitzer ever testified that he told these guys before the incident not to physically approach anybody. All he said was what he was quoted in the record. He said, backing and filling, as it were, they weren't supposed to approach anybody. He didn't tell them that. After the fact, he told the guy that he wasn't supposed to have done that. And I would respectfully submit in this case, Justices, that the trial court should be reversed, respond to the superior. Vicarious liability should apply. And I also believe that the other point would also warrant the reversal. I thank you very much for your time and the energy you've brought to this matter. Thank you. Counsel, thank you both. Interesting case, well presented. Well presented. The case will be taken under advisement.